UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

_____
                                          )
KIMBERLY P. DeCAMBRE,                     )
                          Plaintiff       )
                                          )
vs.                                       )          CASE NO. 1:14-cv-13425-WGY
                                          )
BROOKLINE HOUSING AUTHORITY,              )
MATTHEW S. BARONAS, JANICE                )
McNIFF AND CAROLE BROWN,                  )
                          Defendants      )
_____          )

PLAINTIFF'S TRIAL BRIEF

The plaintiff respectfully submits the following trial brief which outlines

some of the additional legal framework in which the Court should consider the

evidence in this case, beyond that which was outlined in the Plaintiff's Memorandum In

Support of the Plaintiff's Motion For A Preliminary Injunction.[1]

I.      **The Brookline Housing Authority Violated 42 U.S.C. § 1983 and the United States**

        **Housing Act of 1937, 42 U.S.C. § 1437f et. seq.**

        A.      **42 U.S.C. § 1983 is a proper means for a Section 8 recipient to challenge**
                **violation of the rent ceiling, for improperly attributing income to a tenant in**
                **violation of HUD regulations and for denial of due process in increasing the**
                **Total Tenant Payment and in terminating the tenants' voucher.**

---

[1] At the hearing held by the court on October 4, 2014, Justice William Young indicated that he was consolidating the hearing on Plaintiff's Motion For a Preliminary Injunction with a trial on the merits and the trial was scheduled for September 19, 2014.  The judge had indicated that oral argument would be heard on September 19th, but he had left open the possibility of the parties filing additional materials, in addition to the fact stipulated record.  Plaintiff's counsel believes that this trial brief is an appropriate means to clarify some of the legal grounds for the plaintiff's claims consistent with the Judge's directive on October 4, 2014.

In the present case, the Brookline Housing Authority violated HUD regulations by increasing DeCambre's Total Tenant Payment above the rent ceiling imposed by 42 U.S.C. § 1437f(o)(2).  The plaintiff relies on the following cases in support her request in Count 1 of the First Amended Complaint that the court remedy this deprivation of her federal rights.  Wright v. Roanoke Redevelopment and Housing Authority, 479 US 418, 423-424 (1987); Johnson v. Housing Authority of Jefferson Parish, 442 F. 3d 356 (5th Cir. 2006)(holding that violation of the rent ceiling for Section 8 tenants under the United States Housing Act of 1937, 42 U.S.C. § 1437f(o)(2) states a cognizable claim under Section 1983); See also, Gammons v. Massachusetts Department of Housing and Community Development, 523 F.Supp.2d 76, 85 (D.Mass.2007); Stevenson v. Willis, 579 F. Supp. 2d 913, __ (Dist. Ohio 2008). Fields v. Omaha Housing Authority, 2006 WL 176629, at *3 (D.Neb.2006); Basco v. Machin, 514 F.3d 1177, 1180 (11th Cir. 2008)(the court held in favor of participants "alleging deprivations of their right to procedural due process under 24 C.F.R. § 982.555(e)(5) and (6), and 42 U.S.C. § 1983.")

    B.      **The Defendants' theory, that a lump sum settlement is an asset in the year that it is received, but that expenditures that deplete the asset in subsequent years are counted as income to Section 8 participants is contrary to HUD's definition of income in 24 CFR §5.609(a)(3) and elsewhere in HUD regulations.**[2]

24 CFR §5.609(a)(3) provides in relevant part: "Any withdrawal of cash or assets from an investment will be included in income, except to the extent the withdrawal is reimbursement of cash or assets invested by the family. Where the family has net family assets in excess of $5,000, annual income shall include the greater of the actual income derived from all net family assets or

---

[2] This issue came up during closing arguments, so counsel decided to address it in this brief.

a percentage of the value of such assets based on the current passbook savings rate, as

determined by HUD."   The regulation indicates that income on assets, not expenditure of assets

themselves, qualifies as income.   Minimal analysis demonstrates the illogic of the defendants

position.   Why would HUD want to encourage individuals to deplete all of their family assets in

one year?  Why would HUD exclude lump sum settlements from assets in the year received, only

to include expenditures from those lump sum settlements in subsequent years?   If HUD wanted

to include lump sum settlements in income, why does it have an exclusion for these under 24

CFR §5.609(c)(3).   The illogical interpretation of the regulations urged by the defendants

demonstrates the arbitrary, capricious and irrational manner in which the Brookline Housing

Authority is construing and applying HUD regulations.

In the present case, Kimberly DeCambre's disability trust was a self settled trust.  All the

assets in the trust, except deminimus income, were here own investment of proceeds from her

lump sum settlements.   The withdrawals are all simply reimbursements of money that was

excluded from income that Kimberly DeCambre had placed in the trust.  Including the

distribution of income, not principal, from the non-revocable special needs trust in DeCambre's

family income, as urged by DeCambre, puts her on the same footing as other recipients of lump

sum settlements who do not have non-revocable disability trusts.

C.    **The Court should not defer to the Brookline Housing Authorities Interpretation of The Federal Housing Act and HUD regulations.**

> A state agency's interpretation of federal statutes is
> not entitled to the deference afforded a federal
> agency's interpretation of its own statutes...What
> concerns us is whether the state law and regulations
> are consistent with federal law. Neither the district
> court nor we defer to the state to answer that
> question.

<u>Orthopaedic Hosp. v. Belshe</u>, 103 F. 3d 1491, 1495 (9th Cir. 1997)

The Housing Act clearly sets a ceiling on the percentage of income to be paid by Section 8 tenants for their rent. 42 U.S.C. § 1437f(o)(2).  HUD regulations clearly exclude lump sum settlements, assets and temporary, sporadic and non-recurring from being included in the family's income for purposes of determining the family's Total Tenant Payment.  In the present case, the Brookline Housing Authority has included lump sum settlements, assets and temporary, sporadic and non-recurring income, in the DeCambre's income, violating HUD regulations and The Housing Act's rent ceiling.  The court should not defer to the local housing authority's usurpation of federal power.  To permit the local housing authority to run roughshod over The Housing Act and HUD regulations places the cart before the horse.   Congress exercised its power under the Spending Clause to provide for the delivery of Section 8 benefits to Section 8 recipients.   What has happened in the present case is that the Brookline Housing Authority has irrationally disregarded the federal rent ceiling and HUD regulations, arbitrarily and capriciously applying some regulatory exclusions while disregarding others.  In the present case, the Brookline Housing Authority excluded some medical expenditures, evidently under 24 CFR §5.609(c)(3), while including lump sum settlements.   In support of its decision, it claims to be deferring an email and a memo from the regional HUD office.   Scrutiny of the memo demonstrates that it does not address the particular factual scenario involved with the DeCambre family, and it specifically instructs that lump sum settlements should be excluded from income.  Therefore, the reason given by the Brookline Housing Authority for its decision has little, if any substance.  At its core, the reasons given by the Brookline Housing Authority in its decision have less substance than a seedless grape.

Because the Brookline Housing Authority's actions are contrary to the letter of federal law as embodied in The Housing Act and HUD regulations, it would be inappropriate to defer to the local agency's misguided interpretation and application of federal law.   Clark v. Alexander, 85 F.3d 146, 150 (4th Cir.1996)("The civil rights cause of action against a state agency implementing a federal program compels federal courts to uphold the letter of federal law...")

**D.      Because The Actions of The Brookline Housing Authority's were arbitrary, capricious and unreasonable, and its decision was not supported by a preponderance of the evidence, its action must be reversed regardless of whether some deference is owed its decision**.

The court should reverse the decision of the Brookline Housing Authority as arbitrary, capricious, whimsical and irrational.  Gammons v. Mass Dept. of Housing, 523 F.Supp.2d 76, 84 (Dist. Mass. 2007) ("a tenant who claims her Section 8 benefits have been arbitrarily terminated because a hearing officer's decision is not based on a preponderance of the evidence pressed at the hearing sufficiently states a claim under § 1983.") Arent v. Shalala, 70 F. 3d 610 (D. C. Cir. 1995) (review for arbitrary and capricious decision making appropriate); Shays v. Federal Election Com'n, 414 F.3d 76 (2005)(striking down 3 FEC decisions as arbitrary and capricious) The arbitrary, capricious and whimsical decision making process at the Brookline Housing Authority was demonstrated by its conclusion that the Brookline Housing Authority had appropriately denied the plaintiff a reasonable accommodation when, in fact, the housing authority had simply disregarded the DeCambre's request for a reasonable accommodation at the time of the informal hearing.   There was no evidence taken at the hearing regarding the decision on the request for reasonable accommodation, excepting DeCambre's carefully documented requests.   The hearing officer simply rubber stamped his subordinates inaction, made

unsupported factual conclusions and gave no reason for why he thought the housing authority's

inaction was reasonable.   The classification of trust assets, the auto purchases, as income, was

another baseless and arbitrary action.   The automobiles were property of the trust.   There is no

regulatory support for counting trust assets as income under 24 CFR §5.609.   No reason was

given in the Brookline Housing Authority's decision why this asset should be counted as income

to DeCambre.   Again, the hearing officer simply rubber stamped the actions of subordinates

without explanation.  With regard to the exclusion of temporary, sporadic or non-recurring

expenditures, no analysis or explanation was given in the decision why temporary, sporadic and

non-recurring expenditures were included in DeCambre's income.   The housing authority

included assets in DeCambre's income and to applied some exclusions while disregarding others

in a whimsical, arbitrary and whimsical fashion.  It gave no plausible reason or explanation for

the manner in which it seemed to apply some exclusions while disregarding others.   The actions

of the Brookline Housing Authority were the height of bureaucratic arrogance and ineptitude.

The hearing officers decision indicates that he viewed interpretation of the regulations

and application to DeCambre's circumstances as a "weighing" of evidence rather than reading

and applying regulations.  He said, "I concur with BHA's opinion that the HUD advisory letter

and the Ben Palmer correspondence outweigh the opinion of the judge in the Finley vs. the City

of Santa Monica court case."  The hearing officer needed to analyze regulations, not weigh

evidence to arrive at a rational decision as to how the regulations should be applied.

Furthermore, the HUD advisory letter and the Ben Palmer letter did not support the factual or

legal conclusions of the hearing officer.  The decision was not supported by a preponderance of

the evidence as required by 24 C.F.R. § 982.555(e)(6).

**D.      No deference is owed to the Brookline Housing Authority's decision under DeCambre's Claims For Administrative Review Under State Law.**

Referring to its powers of administrative review under state law, the Supreme Judicial

Court has held:

> [i]n regard to the regulations governing the voucher program, it is the department, and not the [Chelsea Housing Authority], that is entitled to deference....The department promulgates the rules of the voucher program; local housing authorities do not. Compare G. L. c. 121B, § 26, with G. L. c. 23B, § 6 (rulemaking authority expressly delegated to department, not local housing authorities). The authority is therefore not entitled to deference in its interpretation of those rules. In any event, deference is not due, where, as here, the authority has applied a regulation with virtually no explanation of what conduct is and is not prohibited by that regulation."

Rivas v. Chelsea Housing Authority, 464 Mass. 329, 335 (2013).

In Rivas, the court held that it would could set aside or modify the housing authority

decision for it determined "'that the substantial rights of any party may have been prejudiced'

because the agency decision is in violation of constitutional provisions; in excess of statutory

authority or jurisdiction of the agency; based on an error of law; made on unlawful procedure;

unsupported by substantial evidence; unwarranted by the facts found by the court on the record as

submitted or as amplified; or arbitrary or capricious, an abuse of discretion, or otherwise not in

accordance with law." Id. at 334.  DeCambre should not be prejudiced in the review of her case

simply because the defendants removed the case to the federal court.   This court can review the

matter just as the state court would have done under its diversity jurisdiction of pendant state law

claims.

**D.    The Brookline Housing Authority deprived DeCambre of Due Process in violation of HUD regulations, the US Constitution 14th Amendment and 42 USC sec. 1983.**

Benefits like those provided under the Housing Act are a matter of statutory entitlement for persons qualified to receive them.  Accordingly, such individuals must receive due process before the benefits are terminated.  Goldberg v. Kelly, 397 U.S. 254, 261-263 (1970).

In the present case, the Brookline Housing Authority's lack of an adequate written explanation for its decision to deny DeCambre a reasonable accommodation and terminate her benefits violated HUD regulations and DeCambre's right to due process.  "HUD regulations, designed to implement protections in Goldberg v. Kelly, 391 U.S. 254 [1970], require, inter alia, [a] decision based on evidence, stating reasons for [the] decision)...Under 24 C.F.R. § 982.555(e)(6), the written decision must 'reflect factual determinations relating to the individual circumstances of the family (based on a preponderance of the evidence at the hearing).'" Costa v. Fall River Housing Authority, 453 Mass. 614, 629 (2009).  Furthermore, under 24 C.F.R. § 982.552 b(c)(2)(iv), "[i]f the family includes a person with disabilities, the PHA decision concerning such action, [termination of benefits], is subject to consideration of reasonable accommodation in accordance with part 8 of this title."  Brantley v. West Valley City Housing Authority, (D. Ct Utah, Feb. 4, 2009)(written decision violated due process because it was conclusory with no stated reasons to support it.)  The hearing officer's denial of any reasonable accommodation, with giving any adequate reasons, and his incorrect conclusion that the reasonable accommodation had been denied, was not supported by a preponderance of the evidence, was a violation of due process, violated HUD regulations, and was arbitrary, capricious and unreasonable.

The Brookline Housing Authority has described its actions as terminating DeCambre's benefits and as a rent adjustment at different times.  Under HUD regulations and principles of due process, DeCambre was entitled to a hearing before her benefits were terminated.  The HUD regulations further describe the processes that a Public Housing Authority must follow before terminating a participant family's Section 8 subsidy. See 24 C.F.R. § 982.555.  A PHA must provide a participant family with a pre-termination hearing if the PHA's proposed termination of a tenant's Section 8 assistance is "because of the family's action or failure to act." 24 C.F.R. § 982.555(a)(1)(v), (a)(2). In such cases, a PHA "must give the family prompt written notice" that includes "a brief statement of the reasons for the [proposed termination]" and "[s]tate that . . . the family may request an informal hearing on the decision." 24 C.F.R. § 982.555(c)(2)(i)-(ii). Furthermore, where the housing authority is revoking a benefit upon which the recipient depends for housing, the process due under the due process clause of the US Consititution also requires a pre-termination hearing.  Congress intended 42 U.S.C. § § 1437d(k) to benefit Housing Choice Voucher Program participants like DeCambre. "It imposes an unambiguous duty on public housing authorities to develop procedures that provide voucher holders with the right to an administrative hearing before deprivation of the voucher benefit." Stevenson v. Willis, 579 F. Supp. 2d 913, __ (Dist. Ohio 2008); DeProfio v. Waltham Housing Authority, No. 2007-1498, Mass. Sup. Court., Lexis 306, *14-15 10 (Mass. Sup. Court, July 17, 2007)(The PHA must give an opportunity for a hearing before it terminates housing assistant payments under and outstanding HAP contract.)  In the present case, the Brookline Housing Authority unlawfully terminated DeCambre's benefit before she was granted a hearing.  Furthermore, when it notified her that her benefit was terminated, it failed to advise her that she had a right to request a hearing in violation of section 4 of its own administrative plan and 24 C.F.R. § 982.555(c)(1) and §

9

982.555(c)(1), et. seq.   When DeCambre requested a hearing despite this error, the BHA then unreasonably delayed providing her with a hearing in violation of HUD regulations and its adminstrative plan.  Where a hearing for a participant family is required as it was in the present case, "the PHA must proceed with the hearing in a reasonably expeditious manner upon the request of the family." 24 C.F.R. § 982.555(d).  Where a family's rent subsidy is precipitously revoked without a hearing, months of delay in providing the family with a hearing is not an expeditious determination.  DeCambre faced eviction for non-payment of rent due to the termination of her subsidy.  The failure to provide DeCambre with a pre-termination hearing, the failure to notify DeCambre that she could request a hearing, and the lackadaisical response of the BHA to DeCambre's repeated requests for a hearing deprived her of due process.

The Brookline Housing Authority also violated DeCambre's rights, denied her due process and violated HUD regulations when it failed to exercise discretion as required by HUD regulations.   A Public Housing Authority is not required to terminate assistance in every circumstance where a basis for termination exists. See 24 C.F.R. § 982.552(c)(1). When determining whether to terminate a family's voucher assistance, a Public Housing Authority may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family or members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.  24 C.F.R. § 982.552(c)(2)(I). There is no indication in the hearing officer's brief written decision that he recognized that he had the discretionary authority to consider any of those relevant circumstances under 24 C.F.R. § 982.552(c)(2)(i). See Lonergan-Gillen v. Gillen, 57 Mass. App. Ct. 746, 749 (2003), quoting

Commonwealth v. Edgerly, 13 Mass. App. Ct. 562, 571 (1952) ("It is one thing to consider [a] right [to make a ruling] and exercise it either way, but having been given that right, analogous to discretion, it is the duty of the judge to exercise it, and it is error as a matter of law to refuse to exercise it"). See also Commonwealth v. Fredette, 56 Mass. App. Ct. 253, 259 n.10 (2002) ("Failure to exercise discretion is itself an abuse of discretion"). The hearing officer's failure to exercise discretion in the present case was arbitrary, capricious, error of law, violated HUD regulations and requires reversal.   Carter v. Lynn Housing Authority, 450 Mass. 626, 635-626 (2008).

> **E.     HUD regulations, as applied to DeCambre by the Brookline Housing Authority, are unconstitutionally vague in violation of the US Constitution 14th Amendment and 42 USC sec. 1983.**

DeCambre, other similarly situated individuals, and Trustees of disability trusts in general, are not fairly informed by HUD regulations that the expenditure of lump sum settlements by a trustee will result in expenditures being included in income and in many cases resulting in the termination of Section 8 benefits.  Because the regulations provide for the exclusion of lump settlements from income, the strained reading of the regulations urged by the Brookline Housing Authority would deprive DeCambre of due process because they do not fairly put beneficiaries of disability trusts on notice that such expenditures could be included in income and are impermissibly vague.  Rivas v. Chelsea Housing Authority, 464 Mass. 329, 342 (2013) A vague regulation violates the Constitution because it fails (1) to define the offense with sufficient definiteness that ordinary people can understand prohibited conduct and (2) to establish standards to permit enforcement of the law in a non-arbitrary, non-discriminatory manner. Woodis v. Westark Community Coll., 160 F.3d 435, 438 (8th Cir.1998).  In the present case, the

construction of the regulations used by the Brookline Housing Authority is not one that

DeCambre could have understood beforehand as prohibited conduct, and, the construction of the

regulations as urged by the Brookline Housing Authority is so unclear that it involves arbitrary

and discriminatory activity by the Brookline Housing Authority.

II.     **The Brookline Housing Authority Violated G.L. ch. 151B, § 504 of the**

    **Rehabilitation Act, Title II of the Americans With Disabilities Act, and the Fair**

    **Housing Act, As Amended.**

    A.    **The Brookline Housing Authority Has Interpreted and Applied HUD**
        **regulations in such a manner that DeCambre was subjected to**
        **discriminatory treatment because she is disabled.**

The hearing officer has indicated that he relied on the HUD advisory letter and the Ben

Palmer email in reaching his decision to include expenditures of the lump sum settlement made

through the special needs trust in DeCambre's income.  Although neither of these documents

suggests that a housing authority should include disbursements of lump sum settlements from

Special Needs Trust in income, the Brookline Housing Authority determined that HUD

regulations do require inclusion of funds.   By definition, special needs trusts are a benefit for the

disabled, and this is explicitly made clear in the HUD advisory letter.  Significantly, the advisory

letter does not refer to the more general term, "non-revocable trusts," which could include both

disability trusts and other non-revocable trusts set up by people without disabilities.  The court

should closely scrutinize the Brookline Housing Authority's interpretation and application of

these rules, because they are explicitly targeted at disabled people.[3]

---

[3] The court owes no deference to the Brookline Housing Authority in determining whether it complied with the anti-discrimination laws.  The Brookline Housing Authority has no particular skill in determining whether or not it is complying with these laws and with anti-discrimination regulations of the Department of Justice.

The ADA is a "broad mandate" of "comprehensive character" and "sweeping purpose" intended "to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life."  The protections of the ADA are not conditioned upon a finding of "discrimination," but also extend to barriers created by "thoughtlessness," "indifference," and "benign neglect."  Alexander v. Choate, 469 U.S. 287, 295 (1985).  Under 28 CFR § 35.130(b)(8) "[a] public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability  or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."  Whether intended or not, DeCambre contends that the treatment of expenditures from her disability trust as income in the present case is an eligibility criteria that tends to screen out people with disabilities from the Section 8 program an is unlawful under the ADA, under ch. 151B, and other laws prohibiting discrimination.  Title II of the ADA declares that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006).

The Brookline Housing Authority has discriminated against Kimberly DeCambre by failing to grant her reasonable accommodations that she has requested and by determining her income eligibility for section 8 in a unlawful and discriminatory manner.   The acts of discrimination include, but are not limited to:

1.  Counting nearly all of the expenditures from her disability trust that included lump sum settlements as income to her, when HUD does not count lump sum settlements as income to people without a disability/special needs trust;

2.   Failing to grant a reasonable accommodation to exclude automobile expenditures and expenses when DeCambre requires and automobile as protection from heat and cold due to her disability, which prevents her from being able to normally regulate her body temperature;

3.   Failing to grant a reasonable accommodation to exclude expenditures from the trust for her cats when the cats are needed to ameliorate the psychological effects of her disability.

4.   Failing to exclude trust expenditures for her cell phone and landline when DeCambre requires these technologies in order to have a lifeline so she can have access to emergency care and when she needs a cell phone to call for help in case of emergencies away from home.

The Brookline Housing Authority's treatment of DeCambre's disability trust/special needs trust was discriminatory.   Housing Authorities have wide latitude to consider individuals disabilities in administering the Section 8 program.   HUD requires Public Housing Authorities to comply with the ADA and other anti-discrimination laws and gives Public Housing Authorities wide latitude to modify rules and regulations so as not to discriminate.   24 CFR, Part 8, subpart C.   Under 24 C.F.R. § 982.552 b(c)(2)(iv), "[i]f the family includes a person with disabilities, the PHA decision concerning such action, [termination of benefits], is subject to consideration of reasonable accommodation in accordance with part 8 of this title."   24 C.F.R. § 8.4(b)(4)(i) requires  recipients of HUD funds not to "utilize criteria or methods of administration the purpose or effect of which would: (i) Subject qualified individuals with handicaps to discrimination solely on the basis of handicap." 24 C.F.R. § 8.4(b)(4)(i) .  Likewise, Under 28 CFR § 35.130(b)(8), "[a] public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability  or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."

The Brookline Housing Authority's treatment of lump settlements that pass through a disability trust singles out disabled individuals for disadvantage when able bodied individuals who don't need a disability trust can spend their lump sum settlements freely.   Not only does it have a tendency to screen out disabled people, but for DeCambre the BHA method of administration and use of eligibility criteria has actually caused the loss of DeCambre's valuable benefits and has resulted in her landlord initiating eviction proceedings.

The Brookline Housing Authority discriminated against DeCambre on the basis of her disability by counting trust expenditures on her phone and cell phone as income, thereby increasing her Total Tenant Payment.   "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 CFR § 35.130(b)(7).   DeCambre repeatedly requested reasonable accommodations from the Brookline Housing Authority although the BHA already knew or should have known that she was disabled and required accommodations because of her receipt of SSI.   A housing authority is on notice of a tenant's disability when they are recipients of SSI or SSDI. See Boston Hous. Auth. v. Bridgewaters, 452 Mass. 833, 845, 898 N.E.2d 848, 857-58 (Mass.2009); Sinisgallo v. Town of Islip Housing Authority, 865 F. Supp. 2d 307 (ED Dist. New York 2012).   Although DeCambre provided detailed medical documentation when asked for a reasonable accommodation prior to the informal hearing, the Brookline Housing Authority demanded further medical documentation, suggesting that the accommodation was being withheld due to inadequate documentation.   When very complete documentation was provided on August 6, 2014, no action or offer of

accommodation was made by the Brookline Housing Authority.  An inference can be drawn that

the request for additional information was simply an obstacle thrown up by the Brookline

Housing Authority.  No matter what information DeCambre provided, the BHA was not going to

provide her with a reasonable accommodation.  The request for additional information was

merely a pretext for discrimination.   In some instances, the Public Housing Authority will

actually increase utility allowances to enable disabled Section 8 recipients to participate equally

in the Section 8 Program.  24 C.F.R. § 965.508.  Giles v. Hous. Auth., No. 89-107 (E.D. Ky. May

3, 1990), 24 Clearinghouse Rev. 257 (No. 45,074, July 1990) (settlement providing for an

electrical allowance for air conditioning where head of household is elderly or member has

medically documented need for air conditioning).  Here, DeCambre is simply asking that her

trust be permitted to pay for phone service that she needs in case of emergency due to her

disability.  There is no cost to the Brookline Housing Authority for this reasonable

accommodation.  This minimal modification in the Brookline Housing Authority's method of

administration can hardly be characterized as interfering with the legitimate operations of the

Brookline Housing Authority.

The Brookline Housing Authority's insistence on counting the automobile purchase by

the trust, where the trust held title to the automobiles, as income to DeCambre is perhaps more

baffling.  DeCambre repeatedly documented her need for an automobile.   She suffers from

numerous severe life threatening medical disorders.  She provided medical documentation from

her physicians that she requires an automobile as protection from the elements, heat and cold,

because her disability makes it difficult for her to regulate her body temperature.   Her

compelling need for an automobile was met with icy silence from the Brookline Housing

Authority.   The inclusion of the auto expenditure in her income, thus disqualifying her from eligibility for Section 8, is analogous to excluding a quadraplegic Section 8 participant from the program because Trust expenditures for a costly electric wheelchair put the recipient over income.  The Brookline Housing Authority's discriminatory failure to accommodate DeCambre's disabilities is blatent, obvious and outrageous.

Accommodating the needs of disabled people to have emotional support animals has been recognized as necessary to provide for reasonable accommodation in many cases.  Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt., Inc., 778 F. Supp. 2d 1028 (D.N.D. 2011) (denying landlord's motion for summary judgment on reasonable accommodation claim for waiver of pet deposit for emotional support animals);  Sec'y of HUD v. Carter, 2011 WL 7064545 (HUD ALJ Dec. 13, 2011) (consent decree ordering landlords to undergo mandatory education and training and adopt non-discrimination policies after they refused to waive $150 pet deposit for tenant's emotional support animal); see also 24 C.F.R. § 960.705 (stating that regulations authorizing PHA to charge pet deposit in public housing does not apply to animals "necessary as a reasonable accommodation to assist, support or provide service to persons with disabilities") Pets need veterinary care.   The Brookline Housing Authority's inflexible insistence on counting Trust expenditures that were made for DeCambre emotional support animals was a denial of reasonable accommodation and was unlawful discrimination against her based on her disability.

Respectfully submitted,
Kimberly DeCambre,
by her attorney,


 /s/ J. Whitfield Larrabee
J. Whitfield Larrabee
251 Harvard Street, Suite 9
Brookline, MA 02446
jwlarrabee@larrabeelaw.com
(617) 566-3670
BBO # 553499

CERTIFICATE OF SERVICE

    I, J. Whitfield Larrabee, hereby certify this document filed through the CM/ECF system
will be electronically sent to the registered participants as identified on the NEF (NEF) and paper
copies will be sent to those indicated as non registered participants.

DATE: October 14, 2014

 /s/ J. Whitfield Larrabee
J. Whitfield Larrabee

18