UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

—————————————————————
                                    )
KIMBERLY DECAMBRE,                  )
                                    )
        Plaintiff,                  )
                                    )            CIVIL ACTION
v.                                  )
                                    )            NO. 14-13425-WGY
BROOKLINE HOUSING AUTHORITY,        )
MATTHEW BARONAS, JANICE MCNIFF      )
and CAROLE BROWN,                   )
                                    )
        Defendants.                 )
—————————————————————               )


YOUNG, D.J.                                      March 25, 2015

MEMORANDUM OF DECISION
FINDINGS OF FACT AND RULINGS OF LAW


I.    **INTRODUCTION**

        In a case involving a beneficiary's special needs trust and

federal housing benefits, this Court is faced with determining

whether such a trust, designed to prevent beneficiaries from

losing their Medicaid and Social Security eligibility, should

also protect beneficiaries from losing their income-based

federal housing vouchers despite statutory language to the

contrary.  The issue before the Court turns on the

interpretation of HUD regulations for calculating annual income

for housing assistance eligibility purposes; specifically,

1

whether income should include disbursements from a special needs trust that was funded by lump-sum settlements from a personal injury lawsuit.  The plaintiff before the Court, Kimberly DeCambre ("DeCambre"), a Brookline, Massachusetts resident and participant in the Section 8 Housing Choice Voucher Program ("Section 8"), alleges that the Brookline Housing Authority ("BHA") unlawfully calculated her annual income in violation of the federal regulations pertaining to Section 8, as well as in violation of her substantive due process rights under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 3604(c) (the Fair Housing Act), 29 U.S.C. § 701 (the Rehabilitation Act), and 42 U.S.C. § 12131 (the Americans with Disability Act).  Her allegations of disability-based discrimination were also raised against three BHA employees: Matthew Baronas (Assistant Executive Director), Janice McNiff (Leased Housing Representative), and Carole Brown (Director of the Leased Housing Department) (collectively with BHA, "Defendants").  DeCambre further requested a preliminary injunction against the BHA to stop it from including certain trust disbursements towards the calculation of her income for Section 8 eligibility.  This Court heard oral arguments at a case stated hearing[1] on September 19, 2014, which greatly

---

[1]  Rather than holding oral arguments on the motion for preliminary injunction, the parties agreed to have a case stated

assisted the Court in assessing the parties' claims.  The Court,
first, rules that DeCambre does not have a section 1983 claim
because the BHA's income determination was not arbitrary and
capricious, and further denies DeCambre's motion for a
preliminary injunction, with an order that her case be remanded
for reconsideration before the BHA.  The Court's reasoning is
laid out below as required by Federal Rule of Civil Procedure
52(a).

## II.  FINDINGS OF FACT

### A.  DeCambre's Disability Status

DeCambre is fifty-nine years old, and presently lives with
her adult son in a Brookline, Massachusetts apartment.  See
First Am. Verified Compl. & Demand Trial Jury ("Compl.") ¶ 11,
ECF No. 9; see also Pl.'s Mem. Supp. Mot. Emergency Prelim. Inj.
("Pl.'s Mem."), Ex. G, Aff. Kimberly P. DeCambre ¶ 2, ECF No. 5-
7.  Since 2005, DeCambre has been a recipient of housing
vouchers through her participation in Section 8, which is
administered locally by the BHA and directly funded by HUD.  As
described on its website, Section 8 provides housing vouchers to

hearing, delivering final arguments on the merits of the case
and allowing the Court to make a judgment based on the record.
See TLT Const. Corp. v. RI, Inc., 484 F. 3d 130, 135 n.6 (1st
Cir. 2007) ("In a case stated, the parties waive trial and
present the case to the court on the undisputed facts in the
pre-trial record. The court is then entitled to "engage in a
certain amount of factfinding, including the drawing of
inferences.") (citing United Paperworkers Int'l Union Local 14
v. Int'l Paper Co., 64 F.3d 28, 31 (1st Cir.1995)).

"low-income families, the elderly, and the disabled to afford
decent, safe, and sanitary housing in the private market."
<u>Housing Choice Vouchers Fact Sheet</u>, HUD.gov (Sept. 17, 2014),
http://portal.hud.gov/hudportal/HUD?src=/topics/housing_choice_v
oucher_program_section_8; <u>see also</u> 42 U.S.C. § 1437(f) et seq.
These vouchers are administered by local agencies and housing
subsidies are paid directly to landlords by the agencies.   <u>See</u>
42 U.S.C. § 1437(f) et seq.   The amount of the rent subsidy
typically is the amount of the gross rent, "minus 30 percent of
monthly adjusted income."   <u>Id.</u>   The BHA, which issues these rent
subsidies in vouchers, is a local housing authority pursuant to
Massachusetts General Law, chapter 121B, section 3, and a
recipient of federal funding for subsidizing rent for its
participants through an Annual Contributions Contract with HUD.
Compl. ¶ 3.

It is undisputed that DeCambre is disabled as she is
currently a recipient of Medicaid and Social Security benefits.
Stipulated Factual R.: Case Stated ("Stip. Factual R.") ¶ 8, ECF
No. 16.   She currently receives Supplemental Security Income
("SSI") in the amount of $835.39 per month from the Social
Security Administration, which provides supplemental income for
"aged, blind, or disabled individual[s]."   42 U.S.C.
§§ 1382c(a)(1), (a)(3); <u>see</u> Pl.'s Mem. 2.   She also receives
Medicaid administered by MassHealth.   <u>Id.</u> at 5.   DeCambre's

4

"major disabilities" stem from kidney disease, which her treating physician describes as "recurrent kidney stones, severe hypokalemia (low potassium) requiring high dose daily potassium supplements, which is thought due to medullary sponge disease and/or Gitelman's syndrome."  Pl.'s Mem., Ex. C2, Dr. Hsiao Letter, ECF No. 5-1.  Her physician also stated that DeCambre suffered from "unusual skin patterns, which is presumed to be primary/secondary erythromelalgia," id., while a second physician noted that DeCambre required "access to heat and central air conditioning to ensure temperature regulation" due to her "numerous medical conditions," Pl.'s Mem., Ex. C2, Dr. Crombie Letter, ECF No. 5-3.  In her complaint, DeCambre further elaborates on her ailments as also including post traumatic stress disorder, fibromyalgia, arthritis, torn labrum in the hips, shoulder and elbow injuries, and a history of depression. See State Ct. R., Ex. A, Verified Compl. & Demand Trial Jury 5, ECF No. 12.

     B.  **Special Needs Trust**

DeCambre is the beneficiary of an irrevocable Special Needs Trust ("Trust") under 42 U.S.C. § 1396p(d)(4)(A) and (C), which is defined as a trust "containing the assets of an individual under age 65 who is disabled  . . . and which is established for the benefit of such individual by . . . a court."  Pl.'s Mem. 2. As an irrevocable trust under section 1396p(d)(4)(C), DeCambre

has no control over the Trust corpus, and the Trust itself earns "little or no interest." Id.  The Trust was funded entirely from a series of lump-sum settlements from a personal injury and property damage lawsuit, and created by the Suffolk Superior Court for DeCambre in 2010.  Id. at 3; see also Defs.' Opp'n Pl.'s Mot. Prelim. Inj. ("Defs.' Mem.") 3, ECF No. 10.  The total amount of the settlement is estimated to be $330,000.  Stip. Factual R. ¶ 7.  DeCambre's counsel in this case, J. Whitfield Larrabee ("Larrabee"), is also the trustee of the Trust.  Pl.'s Mem., Ex. C1, Letter to Joseph, ECF No. 5-3.  Based on an expenses chart submitted by DeCambre, principal from the Trust has been used to pay for administrative trustee fees; cell phone, cable, and internet bills; veterinary care for cats; dental and medical costs; and travel expenses.  See Pl.'s Mem., Ex. F, Kimberly DeCambre Supplemental Needs Trust Payments 12-1-2012 to 11-04-2013 ("Trust Expenses"), ECF No. 5-6.

### C.    DeCambre's Section 8 Eligibility

DeCambre has been a participant in the Section 8 housing assistance program since 2005, and effective December 1, 2012, her monthly rental payment for her apartment was $312.00.  Pl.'s Mem., Ex. A, Notice Rent Adjustment 2012, ECF No. 5-1.  The fair market or contract rent totaled $1,595.00 per month, and she received $1,283.00 in housing assistance program payments.  Id.  On October 28, 2013, the BHA adjusted DeCambre's rent to $435

per month, explaining that certain disbursements from her Trust
could not be classified as exempt medical expenses.  Stip.
Factual R., Ex. 4, Notice Rent Adjustment 2013, ECF No. 16-4.
Upon request for the submission of statements from the Trust for
their annual re-certification process, Stip. Factual R., Ex. 5,
Letter from Lea Luz Rios, ECF No. 16-5, DeCambre submitted
various trust-related documents to the BHA on November 12, 2013,
Stip. Factual R., Ex. 6, Letter from Larrabee to Dalia Joseph,
ECF No. 16-6.

Upon conducting their annual recertification in the fall of
2013, the BHA determined that DeCambre was no longer eligible to
receive housing assistance because her income was too high.
Defs.' Mem. 3.  DeCambre self-reported her gross annual income
to include $2,004 from food stamps, $9,748.68 from social
security, $200 from her son's earnings, and $445 from ABCD Fuel
Assistance, totaling $12,397.68 for 2013.  Stipulated Factual
R., Ex. 3, Appl. for Continued Occupancy, Sept. 10, 2013, ECF
No. 16-3.  The BHA, however, based on submitted income tax
returns from DeCambre's attorney, found that DeCambre received
approximately $200,000 in distributions from the Trust between
2011 and 2013, and that her 2011 income tax return reported an
income of $108,322.  Defs.' Mem. 4.  Further, the BHA found that
the Trust disbursements totaled $31,749.01 in 2012 and totaled
$62,828.99 between January and November 2013 – which they

7

determined should have been reported as income for purposes of recertification.  Id.  The BHA's yearly gross household income limit for a two-person household is $22,600.  Section 8 – Housing Choice Vouchers, Brookline Housing Authority (Oct. 31, 2014), http://www.brooklinehousing.org/sect8.html.  As a result, DeCambre was notified in a letter dated December 18, 2013, that effective February 1, 2014, she would be responsible for the full amount of her contract rent, totaling $1,560.00, and would no longer be eligible for housing assistance.  Pl.'s Mem., Ex. B, Notice Rent Adjustment 2013, ECF No. 5-2.  On January 13, 2014, DeCambre's counsel emailed the BHA indicating that she would appeal the rent adjustment decision.  Stip. Factual R., Ex. 10, Larrabee Email of Jan. 14, ECF No. 16-10.  A meeting was scheduled between the parties for February 7 to review her file. Stip. Factual R., Ex. 11, McNiff Letter of Jan. 24, ECF No. 16-11.  Meanwhile, DeCambre failed to pay the total amount of her adjusted rent ($2,200.00 in arrears), and received a notice to quit for non-payment of rent from her landlord in March 2014. Pl.'s Mem., Ex. G, Mar. Notice to Quit, ECF No. 5-7.

### D.      Request for Reasonable Accommodation and Hearing Officer's Decision

On March 14, 2014, DeCambre submitted a Request for Reasonable Accommodation[2] to the BHA, as well as a request for a hearing.  Pl.'s Mem., Ex. C2, Req. Reasonable Accom., ECF No. 5-3; see also Stip. Factual R., Ex. 16, Req. for Hearing, ECF No. 16-16.  In it, she requested that "[the BHA] exclude from counting the expenditure of trust money" that was used towards DeCambre's car purchase, her cell phone and landline bills, and veterinary costs for the care of her cats, which she argued should be categorized as medical expenses, and thus be exempt from income calculation.  Req. Reasonable Accom.  DeCambre argued her car was a medical necessity because she could not be exposed to hot or cold temperatures outdoors, her cell phone and landline were needed in case of an emergency due to her "medically precarious condition," and her cats were necessary as "companion animals for her mental health, mental and physical disabilities."  Id.

---

[2] Pursuant to HUD provisions, any person with a disability is afforded the right to request reasonable accommodation from housing providers to change its "rules, policies, practices, or services so that a person with a disability will have an equal opportunity to use and enjoy a dwelling unit or common space." Disability Rights in Housing, U.S. Department of Housing and Urban Development (Oct. 30, 2014), http://portal.hud.gov/hudportal/HUD?src=/program_offices/fair_housing_equal_opp/disabilities/inhousing.

An informal hearing was held at the BHA on May 27, 2014, with counsel for both sides present. Def.'s Mem. 5. The Assistant Executive Director of the BHA, Matthew Baronas, served as a hearing officer and issued a written decision on June 9, 2014. Id. In his decision, Baronas determined that the BHA had correctly calculated DeCambre's income and rental share, based upon their interpretation of HUD regulations. Stip. Factual R., Ex. 33, Baronas Decision, ECF No. 16-33. Citing to 42 C.F.R. § 5.609, he ruled that, although DeCambre's personal injury settlement is not considered income under HUD regulation, when these assets were placed in an irrevocable trust, the distributions from the trust must then be "considered income unless specifically excluded by regulation." Id. Baronas also determined that the BHA provided a timely hearing in good faith. Id. at 5-6.

DeCambre made a second Reasonable Accommodation Request on July 8, 2014, upon which she was notified by the BHA that she was missing a medical professional certification "attesting to the nexus between Ms. DeCambre's disability and the accommodation she claims to need." Defs.' Mem. 6. Initially, Larrabee signed this certification himself, arguing that no medical professional was needed, Stip. Factual R., Ex. 45, Larrabee Email of July 21, ECF No. 16-45, and submitted a certification from another physician who treated DeCambre for a

hip and shoulder injury in May 2010, Stip. Factual R., Ex. 25,
Certification of Med. R. John Doherty, Jr. M.D., ECF No. 16-25.
Larrabee eventually submitted a certification from DeCambre's
primary care physician on August 6, 2014.  Stip. Factual R., Ex.
52, Larrabee Email of Aug. 6, ECF No. 16-52.  On August 12,
2014, DeCambre received another notice to quit, stating that she
was $1,502.00 in arrears.  Pl.'s Mem., Ex. G, Aug. Notice to
Quit, ECF No. 5-7.

   E.   **Procedural History**

   DeCambre filed a complaint against the Defendants with the
Massachusetts Commission Against Discrimination ("MCAD") on June
19, 2014, Stip. Factual R., Ex. 23, Mass. Comm'n Against
Discrimination Charge Discrimination, ECF No. 16-35, and
subsequently withdrew the complaint on August 26, 2014 as a
result of pursuing her claims in court, Stip. Factual R., Ex.
30, Dismissal & Notification of Rights, ECF No. 16-30.  On
August 8, 2014, DeCambre filed this lawsuit against the BHA in
the Massachusetts Superior Court sitting in and for the County
of Norfolk, seeking $1,000,000 for damages, judicial review, and
declaratory and injunctive relief arising from the BHA's
decision to withhold her Section 8 Housing Assistance Program
("HAP") payments.  State Ct. R., Ex. A, Verified Compl. & Demand
Trial Jury 1, ECF No. 12.  This action was removed to this Court

on August 21, 2014.  See State Ct. R., Notice of Removal 3, ECF No. 12.

DeCambre filed her motion for preliminary injunction on August 22, 2014.  Pl.'s Mot. Prelim. Inj., ECF No. 4.  The case stated hearing was heard on September 4, 2014.  Elec. Clerk's Notes, ECF No. 11.

### F.   Claims Raised

Along with the allegations that BHA miscalculated the amount of her Total Tenant Payment and refused to make reasonable accommodations for her disability upon request, in violation of the federal regulations governing Section 8 and her substantive due process rights, DeCambre also asserts breach of lease, interference with quiet use and enjoyment, declaratory and injunctive relief, and a writ of mandamus and judicial review.  Def.'s Mem. 7.  Both parties' arguments, however, were limited to the motion for preliminary injunction based on just her first two counts: (1) violation of federal civil rights under section 1983, and (2) disability discrimination under Massachusetts General Law chapter 151B as well as the related federal statutes.  Id.  As a preliminary matter, this Court finds that DeCambre did not adequately prove each element of her breach of lease and interference with quiet use and enjoyment claims, and therefore cannot prevail on these causes of action.

12

Adjacent to the central dispute over the HUD provisions and regulations, DeCambre claims that the BHA's determination "knowingly and willfully" violated her federal civil rights because it arbitrarily terminated her participation in Section 8 housing in a decision that was "not based on a preponderance of the evidence." Compl. ¶¶ 54-60.  Second, she claims that the BHA denied her benefits "by reason of her disability" in violation of the Rehabilitation Act, Title II of the ADA, and the Fair Housing Act.  Id. ¶¶ 65-68.  Third, she moves for a preliminary injunction to enjoin the BHA from counting her Trust disbursements towards the calculation of her total tenant rent, and to resume payment of her housing vouchers in the amount of $1,283 per month, retroactive to July 1, 2014.  Pl.'s Mot. Prelim. Inj.

## III. RULINGS OF LAW

### A.   Regulatory Interpretation and HUD Guidance

Central to the core issues before the Court is the interpretation of several HUD regulatory provisions regarding the treatment of trust disbursements with regard to calculating annual income.  HUD regulation 24 C.F.R. § 5.609 addresses exclusions and inclusions of "annual income" with regard to financial eligibility for Section 8 housing assistance, while 24 C.F.R. § 5.603 provides further definitions of "net family assets" and "total tenant payment," and explicitly excludes

lump-sum personal settlement payments from the definition of annual income.  The parties' differing applications of these regulations result in their opposing positions.

The salient facts can be summarized as follows: (1) DeCambre received a series of settlements totaling approximately $330,000 from a personal and property injury lawsuit between June 2010 and December 2012, (2) this settlement was deposited into an irrevocable Special Needs Trust created by the Suffolk Superior Court in June 2010, and (3) DeCambre has used principal from the Trust to pay for an automobile, travel expenses, cat veterinary care, and dental and medical fees.  See Stip. Factual R. ¶ 7.  DeCambre argues that the Trust disbursements used to pay for these items should not be counted towards her annual income, because the source of her funds are from income-exempt lump-sum settlements and, in the alternative, her expenditures should still be income-exempt under a separate exclusion for "temporary, nonrecurring, and sporadic" payments, see 24 CFR § 5.609(c)(9).

## 1.   HUD Regulations on Section 8 Income

Analysis begins by examining the plain meaning of the language of the applicable regulations.[3]  Annual adjusted income

---

[3] See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756 (1975) ("The starting point in every case involving construction of a statute is the language itself."); see also Laracuente v. Chase Manhattan Bank, 891 F. 2d 17, 22 (1st Cir.

for Section 8 purposes is defined as "all amounts, monetary or not, which: (1) Go to . . . the family head . . . or (2) Are anticipated to be received from a source outside the family during a 12-month period following admission . . . and (3) Which are not specifically excluded in paragraph (c) of this section." 24 C.F.R. § 5.609(a) (1)–(3).

Specifically excluded from annual income are: "Lump-sum additions to family assets, such as inheritances, insurance payments (including payments under health and accident insurance and worker's compensation), capital gains and settlement for personal or property losses (except as provided in paragraph (b)(5) of this section)." 25 CFR § 5.609(c) (3) (emphasis added). Applied to DeCambre's initial lump-sum settlement, it is indisputable that this amount is excluded from calculation of annual income.

Complicating this analysis, however, is an adjacent provision under section 5.609. Section 5.609(b)(3) provides that annual income can include: "Interest, dividends, and other net income of any kind . . . . [w]here the family has net family assets in excess of $5,000, annual income shall include the greater of the actual income derived from all net family assets or a percentage of the value of such assets based on the current

1989) ("The ordinary meaning of words expresses the underlying legislative purpose of the statute.") (internal citations omitted).

passbook savings rate, as determined by HUD."   25 CFR §

5.609(b)(3).  Net family assets,

> [i]n cases where a trust fund has been established and
> the trust is not revocable by, or under the control
> of, any member of the family or household, the value
> of the trust fund will not be considered an asset so
> long as the fund continues to be held in trust.  <u>Any
> income distributed from the trust fund shall be
> counted when determining annual income under [section]
> 5.609</u>.

24 CFR § 5.603(b)(2)(emphasis added).  Under a straightforward

application of this provision, DeCambre's Trust disbursements

would be counted towards her annual income, notwithstanding

expenditures falling under separate exclusions such as medical

expenses or temporary, nonrecurring spending.  As these

regulations do not address a situation where an irrevocable

trust is funded by lump-sum settlements, this Court turns to

other resources to glean guidance on this matter.

### 2.   <u>Finley</u> v. <u>City of Santa Monica</u>

The core issue is whether a settlement loses its identity

as a lump-sum settlement once it is placed in an irrevocable

trust.  One state court has addressed this question.  In 2011, a

Los Angeles County Superior Court held that distributions from a

special needs trust were excluded from Section 8 annual income.

<u>Finley</u> v. <u>City of Santa Monica</u>, No. BS127077, 2011 WL 7116184

(Cal. Super. Ct. May 25, 2011); <u>see also</u> Pl.'s Mem., Ex. D,

Finley Op., ECF No. 5-4.  The court in <u>Finley</u> held that both

16

sections 5.609 and 5.603(b)(2) could be "harmoniously applied to determine that distribution of principal from the [trust] is not income." Id. at 6.  This is because under 24 CFR § 5.609(a)(1)-(3), annual income includes both monetary and non-monetary amounts that "go to, or on behalf of, the family head" and "paragraph (c)" income exclusions.  Ruling that "[the special needs trust] principal . . . . remain[s] excluded under 5.609(c)," Finley Op. 6, the Finley court concluded that the "distribution of principal from an irrevocable trust, which is not a family asset, is not annual income where the principal was excluded from annual income under section 5.609(c)(3),"[4] id. at 7.

Reading these provisions "harmoniously," however, does not exactly explain how a lump-sum remains a lump-sum, even when

---

[4]  The Finley court explains that this statutory reading comports with HUD's treatment of interest and principal.  Finley Op. 6-7 (citing to the HUD Housing Choice Voucher Guidebook, AR 161-200, available at http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_11749.pdf).  Under Exhibit 5-2 of the Guidebook, a lump-sum settlement is considered a family asset and interest earned on the settlement is counted as income.  Id. at 7.  An irrevocable trust, however, is not categorized as an asset, so interest generated by the trust is only counted as income when it is distributed to the beneficiary, under section 5.603(b)(2).  Id.  As a result, sections 5.609(c) and 5.603(b)(3) "place[] interest distributions from an irrevocable trust on the same level field with distributions from family assets, including settlements.  It also means that distribution of principal from an irrevocable trust, which is not a family asset, is not annual income where the principal was excluded from annual income under section 5.609(c)(3)."  Id.

poured into an irrevocable trust.  Rather, it only suggests that
certain income exclusions predominate over other provisions.
Here, the Finley court's statutory reading makes sense only if
the annual income exclusions under 5.609(c) were deemed to
override the net family assets definitions provision under
5.603(2), which includes distributions from an irrevocable trust
in the calculation of annual income.  To be clear, nothing in
the regulations instruct that certain exclusions prevail over
income inclusions, nor do they specifically address settlement-
funded irrevocable trusts.  When determining which regulatory
provisions apply to DeCambre's expenditures, the Court cannot
arbitrarily impose a reading which would impute greater weight
to certain income provisions over others.[5]  As a result, this
Court does not follow the line of reasoning in Finley (noting
that this Court was not bound by this decision to begin with).

Understanding, however, that the Finley court's reasoning
addressed an equitable issue as well as a statutory one, the
Court acknowledges the underlying problem of losing housing
benefits due to use of a special needs trusts -- especially when

---

[5]     Congress has expressly delegated rule-making authority
to HUD to establish procedures for income verification.  See
McGann v. United States, No. 98 CIV. 2192 SAS, 1999 WL 173596,
at *6 (S.D.N.Y. Mar. 29, 1999) aff'd, 205 F.3d 1323 (2d Cir.
1999) ("Here, Congress delegated rule-making authority to HUD to
establish procedures for income verification in 42 U.S.C.
§ 1437f(k) (1994) and HUD promulgated regulations to define and
verify income in 24 C.F.R. §§ 5.609, 5.617 (1998).").

such trusts are established to protect disabled beneficiaries'
access to Medicaid and Social Security benefits.[6]  As cogently
argued before this Court, special needs trust beneficiaries like
DeCambre are unfairly disadvantaged in regards to federal
housing assistance simply by their choice to place their
settlement funds in a special needs trust.  Tr. 23:1-15  ("The
problem with this situation is . . . not only is the Brookline
Housing Authority not treating people, and Ms. DeCambre, equally
with other nondisabled people, they're treating her
worse . . . . So you can have a trust, but you can't have any
benefit from it.").  As noted in <u>Finley</u>, DeCambre could have
taken her personal injury settlement and placed it under her
mattress, Finley Op. 6, from which she could freely have used it

---

[6]   This Court is not the first to note this special needs
trust problem.  Multiple legal publications and guidebooks
caution trustees and attorneys on structuring special needs
trust to protect beneficiaries from losing their federal housing
benefits.  <u>See generally</u> Thomas D. Begley, Jr. & Andrew H. Hook,
<u>Drafting Issues in Self-Settled Special Needs Trusts</u>, Elder Law
2004, 31 ESTPLN 510, 514 ("[d]rafting a special needs trust is a
complex undertaking involving a knowledge of public benefit law
and many considerations pertaining to the beneficiary.  These
trusts do not readily lend themselves to forms and must be
individually tailored to each situation."); Gregory Wilcox,
Esq., <u>Special Needs Trust v. Section 8</u>, California Advocates For
Nursing Home Reform (Nov. 1, 2014),
http://www.canhr.org/publications/
newsletters/NetNews/Feature_Article/NN_2007Q4.htm (noting that
"it is becoming increasingly apparent that most SNTs often
overlook a major problem . . . . In contrast to [Social
Security] and [Medicaid], the Section 8 housing assistance
program has no language in its rules that expressly recognizes
and protects SNTs.").

for any purpose without reporting her expenditures as Section 8 income.

Still, the BHA's decision to treat DeCambre's expenditures as disbursements from an irrevocable trust, counting it towards income under section 5.603, was a reasonable application of what this Court reads to be clear and unambiguous HUD rules. Revision of agency regulation is not in the district courts' repertoire, and HUD's interpretive rules on income calculation ought be given deference where they are a "reasonable interpretation." See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation . . . . a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."); see also McGann v. United States, No. 98 CIV. 2192 SAS, 1999 WL 173596, at *7 (S.D.N.Y. Mar. 29, 1999) aff'd, 205 F.3d 1323 (2d Cir. 1999) (explaining that the "plaintiff [cannot] challenge an interpretive rule, such as HUD's procedures on calculating the Section 8 subsidy pursuant to 24 C.F.R. §§ 5.609 and 5.617" because "[i]nterpretative rules . . . do not create rights, but merely 'clarify an existing statute or regulation.'") (internal citations omitted); see generally Linda

D. Jellum, <u>The Impact of the Rise and Fall of</u> Chevron <u>on the</u>
<u>Executive's Power to Make and Interpret Law</u>, 44 Loy. U. Chi.
L.J. 141 (2012).

DeCambre's expenditures were from her Trust, which happened
to be funded by her lump-sum settlement, and HUD income-counting
rules reasonably were applied to her Trust disbursements.  This
is not to say that further guidance and clarification from HUD
is not needed; addressing this very specific issue of
settlement-funded special needs trusts are, to say the least,
critically necessary to address this growing issue in federal
housing and disability law.

Understanding the compelling equitable arguments raised by
DeCambre, the Court considered HUD advisory letters and
handbooks for further guidance.

### 3.    2007 New England HUD Advisory Letter

The BHA relies on a HUD Advisory Letter from 2007, which
was sent to them by Benjamin Palmer, a HUD Portfolio Management
Specialist, in April 2012.  Defs.' Mem. 12.  The Advisory Letter
was provided by HUD's Boston Office of Public Housing, and
specifically addressed Special Needs Trust ("SNT") disbursements
and income calculations.  Defs.' Mem., Ex. D, HUD Advisory
Letter, ECF No. 10-4.  Citing section 5.603(b)(2), the letter
states "the corpus (principal) of an applicant's . . . SNT is
not considered an asset," which comports with the plain reading

of the provision.  Id. at 1.  The letter continues,

"[d]istributions from the trust will be counted when determining

annual income under 24 CFR 5.609," id., unless specifically

excluded or included under sections 5.609(c) and 6.611, and that

"[t]he ultimate determination of whether each of the above

expenditures counts towards annual income or falls within an

exclusion or deduction is to be made by the Public Housing

Authority," id. at 2.

While the letter provides examples of SNT distributions

that are excluded or counted, it does not provide separate

guidance as to whether the source of an SNT could potentially

exclude its distributions from being counted towards annual

income.  Id. at 1-2 (providing only that "[a]nnual income does

not include items such as . . . [l]ump-sum additions to family

assets such as . . . settlement for personal or property

losses.").

What can be gleaned from this letter, however, is an

explanation for why SNT income is treated differently by HUD as

compared to Medicaid: "Unlike Medicaid,[7] HUD is not reimbursed

_____

[7]  Under Medicaid regulations, special needs trusts are
defined so that "the State will receive all amounts remaining in
the trust upon the death of such individual up to an amount
equal to the total medical assistance paid on behalf of the
individual under a State plan under this subchapter."  42 U.S.C.
§ 1396p(d)(4)(A).  No such provision exists under the HUD
regulations on annual income.

for benefits provided with excess trust corpus at the end of the
beneficiary's lifetime; this accounts for some differences in
the treatment of SNT income between the HUD and Medicaid
regulations." Id. at 2.  This is offered to explain why SNT
expenditures "that do not fall under an exclusion or deduction
are presumed by the regulations to be available for housing
expenses and are therefore counted towards annual income." Id.
(emphasis added).  This seems logical enough – because there is
no guarantee of reimbursement from the excess principal upon a
beneficiary's death, HUD chose to impose a more stringent income
requirement on federal housing voucher participants.[8]  The
question remains whether this policy justifies the result of
denying federal housing assistance to disabled SNT

---

[8]   For context, to become eligible for Medicaid, a recipient
must meet the asset requirement for Supplemental Security
Income.  See 42 U.S.C. § 1382(a)(1) (defining income and asset
requirements for disabled individuals).  DeCambre currently
receives both.
     Medicaid and Social Security regulations explicitly exclude
special needs trusts from being counted towards a beneficiary's
resources.  See 42 U.S.C. § 1396p(d)(4)(A) ("This subsection
shall not apply to . . . [a] trust containing the assets of an
individual under age 65 who is disabled . . . and which is
established for the benefit of such individual by a . . .
court."); see also 42 U.S.C. § 1396p(c)(2)(B)(iv) (preserving
eligibility for medical assistance if assets were transferred to
a special needs trust).  HUD does not have an asset-based (nor
disability-based) eligibility requirement for Section 8, but
requires that a certain portion of a family's assets be counted
towards annual income.  See 24 CFR § 5.603(b) (defining net
family assets); see also 24 CFR § 5.609(b) (listing what is
included in annual income, including the "[interest, dividends,
and other net income of any kind from real or personal
property.").

beneficiaries.  The Court thinks not, noting that the policy
does not directly speak to federal housing programs eligibility
requirements nor does it suggest that lump-sum settlements
should remain lump-sums regardless of the depository it is in.
At most, this policy seems to suggest that housing authorities,
who already carry "[t]he ultimate determination of whether each
of the above expenditures counts towards annual income or falls
within an exclusion or deduction," can choose to count certain
non-excluded expenditures towards annual income.  Id.

### 4.   HUD Handbook on Net Family Assets

While the Advisory Letter does not provide specific
guidance as to settlement-funded special needs trusts, a 2013
HUD Handbook on occupancy requirements confirms that settlement
funds placed in irrevocable trusts are not assets.  HUD Handbook
4350.3: Occupancy Requirements of Subsidized Multifamily Housing
Programs, U.S. Department of Housing and Urban Development ("HUD
Handbook") 5-39 (Nov. 3, 2014),
http://portal.hud.gov/hudportal/documents/huddoc?id=43503c5HSGH.
pdf ("Assets placed in nonrevocable trusts are considered as
assets disposed of for less than fair market value except when
the assets placed in trust were received through settlements or
judgments.") (emphasis added).  This clarifies the definition of
net family assets under 24 C.F.R. § 5.603(b)(3), which includes
"the value of any . . . assets disposed of by an applicant or

tenant for less than fair market value (including a disposition
in trust . . .) during the two years preceding the date of
application for the program."  See also HUD Handbook 5-38
("Owners must count assets disposed of for less than fair market
value during the two years preceding certification or
recertification.").

     At oral arguments, the BHA raised an argument that a lump-
sum is only a lump-sum for the year it was transferred into an
irrevocable trust,

        but once it's been sitting in a trust for two or three
        years, it's no longer a lump sum, it's now an amount
        of money that the plaintiff is actively . . . taking
        distributions from and it is not a fair
        characterization to call that money a 'lump sum' any
        longer than the one year period within which that
        money is first received.

Tr. 9:4-9 (emphasis added).  It is unclear whether the BHA was
referring to the two-year penalty period for under-market
transfer of assets, but this one-year characterization is not
supported by the regulations, nor is it supported by the HUD
Handbook on asset transfers.  The Court cannot accept BHA's
theory that a lump-sum is only a lump-sum for the first year, as
it simply has no basis in the regulations.

     The only conclusion that can be drawn is that the
settlement funds which were placed into DeCambre's special needs
trust were not assets disposed of for less than fair market
value under section 5.603.  As a result, section 5.609(b)(3)'s

requirement that annual income includes interest generated by
net family assets "in excess of $5000" does not apply, insofar
as DeCambre's Trust is concerned.

### 5.   Conclusion on Regulatory Interpretation

Upon analysis of the relevant HUD regulations on annual
income and net family assets, as well as HUD advisory
publications and non-binding case law, the Court is unable to
find any regulatory support for DeCambre's argument that her
Trust expenditures must be excluded from annual income and
her Trust corpus remained a lump-sum settlement.  To the extent
the BHA treated DeCambre's expenditures as spending from an
irrevocable trust, rather than from a personal settlement fund,
the Court holds that their determination was a reasonable one.

### B.   Due Process Claims

The following matters remain: whether the BHA violated
DeCambre's due process rights on the basis of her disability, in
their initial eligibility determination and their subsequent
reasonable accommodation determination, and whether a
preliminary injunction is warranted to enjoin the BHA from
counting DeCambre's Trust disbursements towards the calculation
of her total tenant rent.  This Court determines that the BHA
did not violate DeCambre's substantive due process rights on the
basis of a disability, and DENIES the motion for preliminary
injunction.

### 1.   Substantive Due Process Claim

DeCambre raises a substantive due process claim -- which was very sparsely briefed -- arguing that the BHA, acting under the color of law, violated the United States Housing Act of 1937, 42 U.S.C. § 1437f et seq., by incorrectly calculating her Total Tenant Payment at $1,560 per month, and forcing her to pay more than thirty percent of her monthly adjusted income in violation of federal regulations under Section 8.  Pl.'s Trial Br. 1-2, ECF No. 24.  She also alleges that her due process rights were violated on the basis of disability discrimination under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 3604(c) (the Fair Housing Act), 29 U.S.C. § 701 (the Rehabilitation Act), and 42 U.S.C. § 12131 (the Americans with Disability Act).  Id. at 8-11.

The Supreme Court has held that public housing authorities operating housing programs under federal housing law may be liable under section 1983.  See Wright v. City of Roanoke Redev. & Hous. Auth., 479 U.S. 418, 428 (1987) ("In sum, we conclude that nothing in the Housing Act or the Brooke Amendment evidences that Congress intended to preclude petitioners' [section] 1983 claim against respondent."); see also Clark v. Alexander, 85 F.3d 146, 150 (4th Cir. 1996) ("The civil rights cause of action against a state agency implementing a federal

program compels federal courts to uphold the letter of federal law while allowing agencies the discretion to perform their function of reasonably administering the federal program.").

Noting that DeCambre fails to name whether she is suing the three named BHA employees in an individual or official capacity, the BHA argued that her section 1983 claims fail under either distinction. Defs.' Supplemental Br. Sept. 19, 2014 Hearing ("Defs.' Suppl. Br.") 2-3, ECF No. 17. First, if the employees were sued in their official capacity, then no personal liability is imposed and the claim is treated as against the BHA. See Hafer v. Melo, 502 U.S. 21, 25 (1991) ("We emphasized that official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (internal citations omitted). Second, if DeCambre intended to sue the BHA employees in their individual capacity, then the individual defendants would receive qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Mason v. Massachusetts Dep't of Envtl. Prot., 774 F. Supp. 2d 349, 373 (D. Mass. 2011) (Tauro, J.). For purposes of analysis, this Court assumes the BHA employees were sued in their official capacity.

A substantive due process claim under the Fourteenth
Amendment requires that a plaintiff "show a deprivation of life,
liberty, or property," Connor B. ex rel. Vigurs v. Patrick, 771
F. Supp. 2d 142, 159-60 (D. Mass. 2011) (Ponsor, J.), aff'd, 774
F.3d 45 (1st Cir. 2014), and "generally confers no affirmative
right to governmental aid, even when such aid may be necessary
to protect . . . property interests," id. at 160.   The First
Circuit has also upheld the use of a "shock the conscience" test
for substantive due process claims against government actors.
Martinez v. Cui, 608 F.3d 54, 65 (1st Cir. 2010).

DeCambre's argument is solely that the BHA, a "state
created political body that administers the federal Section 8
program," improperly calculated her income, resulting in her
having to pay more than one hundred percent of her income
towards rent, in violation of 42 U.S.C. § 1437(o)(2), which
limits a Section 8 tenant's rent payment to thirty percent of
their monthly income.   Pl.'s Mem. 7-8.   No further argument was
provided as to whether DeCambre has a constitutionally protected
property right to the regulatory rent ceiling.   See Gammons v.
Mass. Dep't of Hous. & Cmty. Dev., 523 F. Supp. 2d 76, 82 (D.
Mass. 2007) (Saris, J.) ("[t]he threshold question is whether
the plaintiffs have an enforceable right under section 1983 not
to have their Section 8 benefits improperly terminated in
violation of HUD regulations.").   Simply because DeCambre had

been an eligible Section 8 tenant prior to her SNT expenditures does not create a property interest in Section 8 assistance, nor has this Court been able to find any statutory or judicial authority mandating that SNT distributions are excluded from income calculations.  Finally, nothing in the factual record outlining DeCambre's interactions with the BHA hints at any conduct that would "shock the conscience."  As a result, this Court rules that DeCambre does not have a substantive due process claim against the BHA.

### 2.   Procedural Due Process Claim

DeCambre's allegations that the BHA hearing officer failed "to find any facts or give any reason for denial of DeCambre's request for reasonable accommodation," Compl. ¶ 41, were treated as a de facto procedural due process claim by the BHA, Defs.' Mem. 9.  In Goldberg v. Kelly, the Supreme Court laid out the requisite procedural rights recipients of public assistance are entitled to, including "timely and adequate notice detailing the reasons for a proposed termination . . . an effective opportunity to defend by confronting any adverse witnesses and presenting his own arguments and evidence orally," an opportunity to be represented by counsel before a hearing officer, and the decision maker's conclusions, "stat[ing] the reasons for his determination and indicate the evidence he relied on."  397 U.S. 254, 266-71 (1970) (noting, however, that

the written decision "need not amount to a full opinion or even formal findings of fact and conclusions of law.").

It is undisputed and evident from the record that DeCambre received both timely notice and hearings throughout the past year.  She first received written notice on December 19, 2013, and upon request for a hearing in January 2014, she received one on May 27, 2014, at which DeCambre was represented by counsel and had an opportunity to present argument and evidence.  Defs.' Mem. 9.

The hearing officer's written determination on the request for reasonable accommodation was issued on June 9, 2014.  Pl.'s Mem., Ex. E, BHA Decision, ECF No. 5-5.  First, the BHA determined that DeCambre's Trust expenditures should be considered "income" for rent calculation purposes, because her expenditures did not fall under the seventeen listed income exclusions under section 5.609(c).  Id.  With regard to section 5.609(c)(3)'s income exclusion for lump-sum additions to family assets from personal or property losses, the BHA argued that although DeCambre's settlement was "originally considered income by HUD regulation," once it was converted to an irrevocable SNT, withdrawals therefrom became considered income and did not fall under any other exclusions.  Id. (Section 5.603(b)(2) counts distribution of principal from these trusts towards income).

DeCambre takes issue with the hearing officer's "arbitrary" and "whimsical" decision to include certain expenditures towards her annual income, giving "no plausible reason or explanation for the manner in which it seemed to apply some exclusions while disregarding others." Pl.'s Trial Br. 6. While this Court takes issue with the some of the BHA's explanations, the hearing officer's June 9, 2014 written decision provided sufficient explanation of the BHA's decision to deny DeCambre's appeal of her rent calculation, noting that this writing "need not amount to a full opinion or even formal findings of fact and conclusions of law." Goldberg, 397 U.S. at 271. Before critiquing the hearing officer's decision, the Court holds that DeCambre does not have a procedural due process claim against the BHA.

### 3.   Discrimination Claim

Finally, as to DeCambre's discrimination-based claims against the BHA, this Court is unable to find any evidence as to whether the BHA calculated her Section 8 income in an unlawful or discriminatory manner, based on her status as a disabled person. The Americans With Disabilities Act mandates:

> A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the

provision of the service, program, or activity being
offered.

28 CFR § 35.130(b)(8).  The Court shares DeCambre's concern that
beneficiaries of special needs trust, by definition including a
disabled population, may face hurdles in securing Section 8
assistance.  But another facet of this argument is that the
beneficiaries of all non-revocable trusts, including non-
disabled persons, face the same risks as DeCambre (noting that
the regulations only address "non-revocable trusts" rather than
special needs trusts).  As multiple treatises and publications
have instructed, SNTs require careful planning and structuring
by trustees to avoid losing federal benefits.  See, e.g.,
Bernard A. Krooks, Special Needs Trusts: The Basics, The
Benefits, and the Burdens, The American Law Institute, SR013
ALI-ABA 245, 270-271 (2009) (providing potential alternatives to
an SNT for beneficiaries seeking to utilize funds a certain way,
while maintaining SSI, Medicaid, and public housing assistance).
Because special needs trusts are just one type of non-revocable
trust, there is less potential concern for disability-based
discrimination than there would be if the regulations had
singled out special needs trusts.

The core problem lies in the lack of clarity in HUD
provisions governing SNT beneficiaries for Section 8 benefits,
and this issue should be addressed by HUD or Congress.

33

Reviewing the decision of the BHA as to the initial income calculation and subsequent denial of reasonable accommodation requests, i.e. its treatment of DeCambre's SNT as a trust, rather than as a lump-sum settlement, is reasonable under the existing regulatory scheme.  No evidence has been presented to this Court as to whether the BHA's interpretation tends to screen out disabled tenants – in fact, it appears that the BHA provided multiple opportunities for DeCambre to provide medical certification in her attempts to show a "nexus between her disability and the accommodation she claims to need."  Defs.' Mem. 10 (noting that DeCambre attempted to use her counsel Larrabee as a medical expert rather than her treating physicians).

Accordingly, this Court holds that the BHA did not act in a discriminatory manner and that DeCambre's discrimination claims against the BHA cannot stand.

## C. Exclusions for Temporary or One-Time Expenses and Medical Costs

Before remanding this case to the BHA, the Court raises several issues found in the BHA's application of income exclusions under "temporary, nonrecurring or sporadic income," § 5.609(c)(9), and under "the cost of medical expenses" exclusion, § 5.609(c)(4).  In its written decision, the BHA argued that it followed HUD regulations properly excluding

34

medical expenses and attorney's fees paid for by the Trust from
its income calculation.  BHA Decision 3.  The BHA, however,
found it unreasonable that DeCambre tried to exclude her
vehicle, phone, and cat expenditures from income.  Id.  They
found that DeCambre's telephone and vehicle expenses were
"regular," id. at 2, supported by the fact that the Trust made
twelve phone/cable/internet payments, nine veterinary payments,
four travel payments, and two car purchase payments between
December 1, 2012 and November 30, 2013, Defs.' Mem. 13–14.  For
example, payments of $480 and $675 were paid for her phone and
internet bills in January 2013, $1,218.51 was paid in veterinary
expenses to the Boston Cat Hospital in February 2013, and
$3,875.12 was paid for airfare and hotel for DeCambre and a
travel companion in February 2013.  Trust Expenses 2–3.  Nearly
$5,000 more was paid for veterinary care through the spring of
2013, and $775 was paid to Comcast for phone, cable, and
internet in April 2013.  Id. at 3.  An automobile purchase in
the amount of $37,601 was paid for in May 2013.  Id. at 4.

    The Court is compelled to point out that case law includes
"television, Internet, [and] travel" expenses as something SNTs
should cover.  The Third Circuit states:

        A supplemental needs trust is a discretionary trust
        established for the benefit of a person with a severe
        and chronic or persistent disability and is intended
        to provide for expenses that assistance programs such
        as Medicaid do not cover."  Sullivan v. County of

<u>Suffolk</u>, 174 F. 3d 282, 284 (2d Cir.1999) (internal
quotation marks omitted).  These expenses—<u>books,
television, Internet, travel, and even such
necessities as clothing and toiletries</u>—would rarely be
considered extravagant.

<u>Lewis</u> v. <u>Alexander</u>, 685 F.3d 325, 333 (3d Cir. 2012) <u>cert.</u>

<u>denied</u>, 133 S. Ct. 933 (U.S. 2013) (emphasis added); <u>accord</u>

<u>Family Trust of Mass., Inc.</u> v. <u>United States</u>, 722 F. 3d 355, 357

(D.C. Cir. 2013).  DeCambre's cable and internet expenses

certainly fit within this argument, supporting excluding these

payments from annual income, even though they may not be

"temporary."  Second, DeCambre's travel costs from February 2013

and March 2013 to visit family could also fall within allowable

SNT expenditures which would exclude it from annual income.

More problematic are DeCambre's purported medical expenses

(excluding her visits to the dentist and treating physicians,

which appear to be undisputed medical expenses).  DeCambre

argues that her car, landline, and veterinary payments should be

excluded from calculation of her income under section

5.609(c)(4).  Pl.'s Mem., Ex. C10, Certification of Need For

Reasonable Accom., ECF No. 5-3 (providing a certification from

DeCambre's treating physician, with an unsigned attachment

attesting to her medical need for a car, landline, and cat

companionship); <u>see also</u> Pl.'s Mem., Ex. C, Larrabee Aff., ECF

No. 5-3.  DeCambre purchased a car on May 28, 2013, with $37,601

from her SNT, Trust Expenses 4, but because the title was held

by her Trust, she argues that it is an asset of the Trust and
not regularly dispersed income. Larrabee Aff. 2. A separate
payment appears to have been made for car insurance totaling
$3,549. Trust Expenses 4. The HUD Occupancy Handbook provides
a chart of deductible medical expenses ("not exhaustive") which
includes the cost of transportation, like bus fare or car
mileage, to and from medical treatment, but does not list the
cost of an actual vehicle. HUD Handbook, Ex. 5-3. The Court
also found the IRS' list of medical and dental expense
deductions, which only provided for the cost of transportation,
like "actual fare for a taxi, bus, train, or ambulance," or for
"medical transportation by personal car, the amount of your
actual out-of-pocket expenses such as for gas and oil, or the
amount of the standard mileage rate for medical expenses, plus
the cost of tolls and parking fees." IRS Topic 502- Medical and
Dental Expenses, IRS (Dec. 11, 2014),
http://irs.gov/taxtopics/tc502.html. DeCambre's automobile
purchase likely cannot fall under these medical expenses, which
seem to be limited to public transportation and mileage costs,
but the fact that title is held by her Trust as an asset should
preclude it from being counted towards income. See 24 C.F.R.
§ 5.603(b)(2) ("In cases where a trust fund has been established
and the trust is not revocable by, or under the control of, any
member of the family or household, the value of the trust fund

37

will not be considered an asset so long as the fund continues to be held in trust.").

What the HUD and IRS guidelines on deductible medical expenses do not cover are the costs to maintain a telephone line.  This expense, however, seems to fall under the acceptable expenditures outlined by the Third Circuit, and could be considered a non-extravagant spending under the same reasoning allowing spending on television and Internet.

More difficult is the issue of DeCambre's cat veterinary expenses, totaling approximately $6,000.  Tr. 34-35 ("she had some sick cats and . . . they became ill with cancer . . . . so there were a bunch of expenditures on these sick cats . . . . They were very expensive cats.").  The HUD Occupancy Handbook covers the cost of "assistance animal and its upkeep" as a deductible medical expense, HUD Handbook, Ex. 5-3, and HUD defines assistance animals as "animals that are used to assist, support, or provide service to persons with disabilities" including "providing emotional support to persons with disabilities who have a disability-related need for such support," id. at Glossary 4.  Noting that there is established HUD and FHA guidance on support animals, covering the right to have a service animal within a dwelling and veterinary costs of an animal, the BHA ought apply this guidance to determine whether DeCambre's cats could be categorized as emotional

38

support animals, allowing their veterinary costs to be counted towards deductible medical expenses in annual income calculation.  No such analysis was provided as to veterinary costs in the written decision, and should be provided on remand.

While this Court does not provide "a brand new hearing or evaluate the facts de novo," Gammons, 523 F. Supp. 2d at 85, it is clear that the BHA could perform a more thorough determination of each potentially excludable expense proffered by DeCambre.  By returning this matter to the BHA, the Court urges the BHA to use some of the guidance provided above in making their Section 8 income determinations.

**D.   Motion for Preliminary Injunction**

Because the Court upholds the BHA's determination in terminating DeCambre's Section 8 eligibility, a preliminary injunction mandating that the BHA stop including trust expenses towards her income calculation does not follow.  Under First Circuit law, a plaintiff seeking a temporary restraining order or preliminary injunction must demonstrate: (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit between the injunction and the public interest.  Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003).  "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving

party cannot demonstrate that he is likely to succeed in his
quest, the remaining factors become matters of idle curiosity."
New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9
(1st Cir.2002).  Based upon the Court's rulings on DeCambre's
discrimination and section 1983 claims, DeCambre does not meet a
showing of likelihood of success on the merits of her federal
due process and discrimination claims, and therefore the motion
is denied.

## III. CONCLUSION

        Understanding that HUD regulation and existing case law
provide deference to the fact findings and conclusions of local
housing authorities, this Court affirms the decision of the BHA
in their income and rent calculations for DeCambre in regards to
her Section 8 housing vouchers.  Based upon its reasonable
interpretation and application of HUD provisions defining
special needs trusts principal in the determination of annual
income, it can be concluded that DeCambre's income, as
calculated by the BHA, exceeded the outlined limits of Section 8
housing eligibility.

        At the same time, this case demonstrates the serious
problem that beneficiaries of irrevocable trusts face; in
particular, those that seek to pour lump-sum settlement funds
into irrevocable trusts.  But until the rules and regulations
are clarified, public housing authorities should provide clear

40

guidance and instruction for potential tenants with regard to their financial planning and spending.  A more thorough and thoughtful analysis is required by public housing authorities when determining Section 8 eligibility, until further guidance is provided by the HUD.

The motion for preliminary injunction is therefore DENIED, and DeCambre's appeal of her Section 8 eligibility is REMANDED to the BHA.

**SO ORDERED.**

_/s/ William G. Young_
William G. Young
District Judge